**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Michael I. McGee,

      Petitioner,

v.

Warden Scott Fisher,

      Respondent.

Civil No. 12-1108 (PAM/JJK)

**REPORT AND RECOMMENDATION**

Michael I. McGee, #08966-089H, FCI Sandstone, P.O. Box 1000, Sandstone, MN 55072, *pro se*.

Ann B. Bildtsen, Esq., Erika R. Mozangue, Esq., and Gregory G. Brooker, Esq., Assistant United States Attorneys, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

## I.    INTRODUCTION

Petitioner Michael I. McGee brings this habeas Petition under 28 U.S.C. § 2241 (Doc. No. 1) asking the Court to require the Federal Bureau of Prisons ("BOP") to reconsider its decision to deny him a transfer to a residential reentry center ("RRC"). Petitioner previously brought a similar petition in this Court, which was denied due to his failure to exhaust administrative remedies. *See McGee v. Fisher*, Civ. No. 11-2601 (PAM/JJK), Doc. No. 13 (Feb. 15, 2012 Report and Recommendation) *adopted by* Doc. No. 15 (Mar. 15, 2012 Order) (*McGee I*). Petitioner has now exhausted his administrative remedies, and, as before, asserts that the BOP did not properly consider him for RRC placement.

However, the staff at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"), where Petitioner is currently confined, including its warden, ultimately determined, in accordance with the requirements of the Second Chance Act, that RRC placement was inappropriate for Petitioner and that decision should not be reversed by this Court. When Petitioner is released from federal prison in January 2013, he will have to report to the Milwaukee County Detention Center to serve a one-year state sentence that runs consecutively to his federal sentence. It was not a violation of the Second Chance Act for the BOP to conclude that, under these circumstances, Petitioner should not be sent to a halfway house a few months before the end of his federal sentence. Placement of a federal inmate in a residential reentry center is for the purpose of preparing the inmate to transition back into the community at large; it is not designed to prepare the inmate for transition into state incarceration. Accordingly, this Court concludes that his Petition should be **DENIED**.

## II. BACKGROUND

In July 2008, after a jury trial in the United States District Court for the Eastern District of Wisconsin, Petitioner, a former Milwaukee alderman, was convicted of Extortion, 18 U.S.C. § 1951(a), Solicitation of a Bribe, 18 U.S.C. § 666(a)(1)(B), and Structuring Transactions to Evade Reporting Requirements, 31 U.S.C. § 5324(a), in connection with his public position. (*See* Doc. No. 9, Decl. of Angela Buege, ("Buege Decl.") ¶ 3, Attach. A); *see also United States. v. McGee*, 612 F.3d 627, 629 (7th Cir. 2010). On October 28, 2008, the Eastern

District of Wisconsin district court imposed a 78-month federal sentence, followed by three years supervised release. (Buege Decl. ¶ 3.) Petitioner has a current projected release date of January 23, 2013. (*Id.*)

On November 14, 2008, approximately two weeks after he was sentenced on the federal charges, Petitioner pled no contest to, and was found guilty of, State of Wisconsin charges for Making a False Statement to an Election Official and Criminal Contempt. (Buege Decl. ¶ 5.) On February 13, 2009, the Milwaukee County Circuit Court sentenced Petitioner to six months in the Milwaukee County correctional facility for each charge. (Doc. No. 11, Decl. of Bernetta Miller ("Miller Decl.") ¶ 3, Attach. B.) In March 2009, the Milwaukee County Sheriff's Office lodged a detainer against Petitioner based on the state sentence. (Buege Decl. ¶ 5.)

Petitioner subsequently moved to modify his state sentence. On September 17, 2009, the Milwaukee County Circuit Court granted his motion in part, staying Petitioner's state sentence "for 48 hours after the date of his release from federal confinement," and ordering him to self-report within "48 hours after the date of his release from federal confinement." (Buege Decl. ¶ 5, Attach. E.) On September 30, 2009, the Milwaukee County Sheriff's Department notified FCI Sandstone that it had cancelled its detainer on Petitioner in accordance with the Milwaukee County Court's September 17, 2009 order. On December 7, 2009, Petitioner's FCI Sandstone case manager, Nicole Gramm, sent a memo to her unit manager regarding Petitioner's security classification. Gramm noted that,

due to the lifting of the state detainer, Petitioner's security classification had been re-scored. (Buege Decl. ¶ 5, Attach. F.) She also noted that, despite the lifting of the detainer, Petitioner still had a state sentence to serve, had an "extensive criminal history," and recommended against lowering his security classification. (*Id.*)

### III. RRC Placement

In June 2011, FCI Sandstone unit staff began reviewing Petitioner for possible RRC placement. Aware of Petitioner's consecutive state sentence, Gramm contacted the BOP Community Corrections Manager's ("CCM") office regarding Petitioner. (Doc. No. 10, Decl. of Nicole Gramm ("Gramm Decl.") ¶ 3.) The CCM works in the Community Corrections branch of the BOP, and, among other things, serves as a liaison between BOP institutions and RRC facilities. Gramm sought the CCM's input regarding the impact of Petitioner's state sentence on his eligibility for RRC placement. Gramm informed the CCM that Petitioner no longer had a state detainer, but rather was to self-report on the Wisconsin state sentence, which remained to be served. (*See id.*)

On June 24, 2011, before the CCM advised Gramm regarding the impact of Petitioner's state sentence, the unit staff at FCI Sandstone met with Petitioner regarding RRC placement. The unit staff reviewed Petitioner's request for an RRC placement and came to the conclusion that "a period of zero to 180 days was sufficient duration to provide Petitioner the greatest likelihood of successful entry into the community." (Gramm Decl. ¶ 2.) Thus, it appears that FCI

4

Sandstone's staff's decision was generally favorable to Petitioner, but how meaningful that decision would actually be depended on the duration of time of any assignment to an RRC.

On July 13, 2011, the CCM staff finally responded to Gramm's request for advice concerning the impact of Petitioner's Wisconsin sentence and told the unit staff at FCI Sandstone that it was CCM's view that Petitioner's consecutive state sentence operated as a detainer; consequently, it would not be appropriate to place Petitioner in an RRC. This appears consistent with BOP policy. BOP Program Statement 5100.08, entitled "Inmate Security Designation and Custody Classification," provides that lodged state detainers *or* consecutive state sentences are scored as a detainer on an inmate's custody classification form. (Buege Decl. ¶ 6, Attach. G.) The applicable provision states:

> *[S]core consecutive state sentences*, lodged state detainers and/or state parole violation terms/warrants *as detainers*.

(*Id.* at 4 (emphasis added); *see also id.* at 7.) And BOP Program Statement 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedure," states that: "Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement" shall not ordinarily participate in CCC programs. (*Id.* ¶ 7, Attach. I at 4–5.)

After it received this advice from CCM, the FCI Sandstone unit staff put a correction in Petitioner's inmate activity report on July 14, 2011, that said: "No

RRC. CCM's office contacted + i/m will need to utilize Huber work rel. No RRC. They view state sentence as a DTN."[1] (Gramm Decl. ¶ 2, Attach. A.)

On August 13, 2011, Petitioner sent a request to case manager Gramm for an explanation as to why he was not eligible for halfway house consideration "even though I get to self-surrender to serve my county sentence." (Gramm Decl. ¶ 5, Attach. C.) Gramm responded on August 16, 2011:

> In concurrence with your Unit Team, the Community Corrections Manager/Dept. views the sentence to be served as we/they would as a detainer/pend. charge. The CCM indicated you should report to Huber upon your release—not an RRC.

(*Id.*)

Petitioner commenced his first lawsuit, *McGee I*, on September 9, 2011, in which he challenged the decision to deny him a transfer to an RRC. On January 10, 2012, the unit team made its recommendation to the FCI Sandstone Warden Fisher about Petitioner's RRC placement:

> Based on the consecutive State sentence to be served, the guidance provided by the CCM's Office, and inmate McGee having established a release residence, Unit Team recommends he be denied the opportunity for an RRC placement prior to his release from incarceration.

(Gramm Decl. ¶ 4, Attach. B.) Warden Fisher adopted the recommendation denying the RRC placement. (Gramm Dec. ¶ 4.)

---

[1] "Huber work. rel." appears to be a reference to a work release program that Petitioner could enter as part of his Wisconsin sentence after his release from federal prison.

6

After he learned that the FCI Sandstone unit staff was not going to recommend a halfway house placement under the Second Chance Act, Petitioner sought his early release from federal prison so that he could begin his state sentence in the Milwaukee County Jail's Huber Center's work release program. (Doc. No. 16, Attach. 1, Inmate Request to Staff.) If this occurred it would, in effect, have resulted in at least part of Petitioner's federal and state sentences being served concurrently. He requested that the Milwaukee County Jail be treated as a community corrections center for purposes of the Second Chance Act and that the Huber work release program be utilized to give him the opportunity to reintegrate into society.[2] As late as June 18, 2012, the FCI Sandstone case manager told Petitioner that she had contacted CCM about placing Petitioner in the Huber Center but had received no response from CCM. (*Id.*) However, on June 21, 2011, the Assistant United States Attorney representing Respondent in this action filed a letter with this Court stating that "the determinative fact remains that on January 10, 2012, the acting warden decided that he would not refer McGee to a halfway house because of his consecutive sentence," thus ending any likelihood that Petitioner would get an early release (i.e., before January 2013) to Milwaukee County Jail. (Doc. No. 15.)

---

[2]  The pre-release programs under the Second Chance Act are commonly referred to as halfway houses, community corrections centers, work release programs, and residential reentry centers. *Spears v. Carnival*, 2011 WL 8492718 (E.D. Tex. 2011.)

In this action Petitioner seeks the following habeas relief: an order to the BOP "to commence, immediately, with his placement into the Residential Reentry Center." (Doc. No. 7, Pl's Mot. for Summ. J. 5.)

## IV.　ANALYSIS

When this Court recommended that Petitioner's first habeas petition in *McGee I* be denied because Petitioner had not exhausted his remedies, the Court expressed the concern that, based on the record before the Court, FCI Sandstone may have failed to comply with the requirement of the Second Chance Act ("SCA") that it conduct an individual assessment of whether Petitioner should be referred to an RRC placement prior to his release from federal incarceration. The Court's concern in *McGee I* was that the unit staff had possibly given a veto power over the decision to the CCM which had in turn mistakenly concluded that Petitioner was ineligible for RRC placement because of a Wisconsin detainer that, in fact, had been rescinded. Now that the appeals process has been exhausted and a full record has been made and presented to this Court, however, it is apparent that FCI Sandstone fulfilled its obligation to make its own individualized assessment of Petitioner's request for RRC placement and properly denied it.

The central office, in its review of Petitioner's appeal from the decision of the FCI Sandstone warden, focused on the key issue here:

> Pursuant to Program Statement … 7310.04, the Warden is the final decision making authority for all RRC referrals the unit team recommends…. In your case, since the institution staff did not

>recommend you for RRC placement, a referral to the CCM was never generated. The decision to deny you RRC placement was made by the Warden, not the CCM.

(Buege Decl. ¶ 4, Attach. D at 3.)

This Court's review of the record confirms that the central office was correct. Although it appears that the unit staff at first concluded that an RRC placement of some duration would be appropriate, it corrected this conclusion after receiving the advice from the CCM that Petitioner's consecutive state sentence should be scored as a detainer and that it would not be appropriate to place Petitioner in an RRC before his anticipated release from federal prison in January 2013. This was consistent with BOP policy that "[i]nmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction or confinement" "shall not ordinarily participate" in RRC programs. (Buege Decl. ¶ 7, Attach. I at 4–5.) And the CCM's view that Petitioner's pending incarceration in Wisconsin should operate as a detainer even if there was no State of Wisconsin detainer in place is consistent with BOP policy that consecutive state sentences operate as detainers on the inmate's custody classification. (Buege Decl. ¶ 6, Attach. G at 7.)

It was appropriate for the unit staff at FCI Sandstone to seek advice from the CCM about whether Petitioner should be sent to an RRC, i.e., halfway house, before the end of his federal sentence of incarceration and prior to the commencement of his Wisconsin sentence. But the record here shows that the

unit staff made its own recommendation based on its own individualized assessment when it told the warden on January 10, 2012, that:

> Based on the consecutive State sentence to be served, the guidance provided by the CCM's Office, and inmate McGee having established a release residence, Unit Team recommends he be denied the opportunity for an RRC placement prior to his release from incarceration.

(Gramm Decl. ¶ 4, Attach. B.) The complete record thus shows that the warden at FCI Sandstone made his own decision about the appropriateness of RRC referral; the CCM did not "unilaterally deny" Petitioner an RRC referral. (Doc. No. 11, Miller Decl. ¶ 2, Attach. A, June 24 Guidance Mem. 2 ("Under no circumstances should CCM staff unilaterally deny RRC referrals or adjust placement dates, unless these determinations can be linked directly to lack of RRC bedspace or fiscal research.").) While, as described above, the BOP scores a consecutive state sentence as a detainer, that does not mean that here the BOP believed that Petitioner had a state detainer. It is clear that the FCI Sandstone staff understood that Petitioner's state detainer had been cancelled, and that it was considering the impact of the consecutive state sentence, not a state detainer, in assessing Petitioner's eligibility for an RRC placement. (Gramm Decl. ¶ 4, Attach. B.) And it was appropriate for the BOP to consider, as part of Petitioner's "history and characteristics," his consecutive state sentence. *See* 8 U.S.C. § 3621(b)(2); *Heppner v. Roal*, Civ. No. 09-2926 (PAM/JJK), 2010 WL 1380141, at *1 (D. Minn. Mar. 31, 2010) (explaining that Program Statement 5100.08 is the BOP's implementation of the discretion it derives from Section

3621(b)); *Bradley v. Morrison*, Civ. No. 06-1158 (MJD/SRN), 2006 WL 3301668, at *2 (D. Minn. Nov. 13, 2006) ("A categorical exercise of discretion by the BOP is permissible where a statutory scheme requires individualized determination."). *Kurt v. Daniels*, No. 06-726-MO, 2007 WL 593575, at *3 (D. Or. Feb. 14, 2007) (although § 3621 requires the BOP to consider all five listed factors in making RRC placement decisions, the BOP is not precluded from denying eligibility based on just one of those factors).

The decision in this case to deny Petitioner a period of confinement at a halfway house or similar facility (at significant federal expense) for a few months before he reported to a Wisconsin detention facility was a reasonable one. The RRC resources are limited, and the goal of RRC placement is to foster the inmate's transition into the community, not his transition to state incarceration. It is clear from the record here that the unit staff took into consideration that Wisconsin has its own transition program (Huber work release) that could possibly be used during Petitioner's one-year sentence to assist in Petitioner's transition into the community at the end of his Wisconsin sentence when Petitioner would actually be transitioning from incarceration into the community.

The fact that in June 2012, six months after the warden's denial of RRC referral, the FCI Sandstone unit manager inquired of the CCM about whether the Milwaukee Detention Center could serve as a community corrections center so that Petitioner could be released directly to the custody of the State of Wisconsin before January 2013, does not change this result. As it stands, the final decision

by the warden about the denial of an RRC referral for Petitioner was in January 2012. Nothing in the record shows that this decision was changed, or even that any change was recommended by the unit staff. The BOP has considerable discretion in assigning a prisoner to a particular facility to serve his federal sentence—whether or not that facility is maintained by the federal government—for purposes of serving a term of imprisonment. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."). Petitioner is not entitled to habeas relief in this Court overturning the BOP's decision to deny RRC placement.

## V. RECOMMENDATION

Based upon the above, and upon all the records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. The Petition (Doc. No. 1) be **DENIED**;

2. Petitioner's Motion for Summary Judgment (Doc. No. 7) be **DENIED**; and

3. This case be **DISMISSED WITH PREJUDICE**.


Dated: October 22, 2012

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 5, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.